Mr. Farrar. Good morning, Your Honors. May it please the Court, Grant Farrar for Defendant Apollon, City of Evanston. What this case is about is about clear error and an inequitable result where a plaintiff- Why is clear error the standard for jury trials? Well, with respect to the damages portion, Your Honor, on the back pay where the trial court, we believe, correctly concluded that the plaintiff unreasonably stopped mitigating and stopped looking for work as of January 1, 2013, but still conferred an inequitable period of time of back pay. So we're addressing the back pay argument first, Your Honor, on the damages. The precedent cited in our brief, Your Honors, with respect to Payne, Mattinson, Hunter, and the cases that we urge this Court to look at from the other circuits, specifically Greenway, we are arguing and we submit that a plaintiff who is not looking for work should not be granted back pay. What do you do with the supplemental authority that your opponents filed, Brown v. Smith, which does quite clearly say that part of establishing this affirmative defense is to show that there were jobs out there? That happens all the time in a lot of cases. In Social Security cases, people go out and find a vocational expert to say there are so many jobs for people with this kind of qualifications. I don't see why that's an unusual burden. Well, Your Honor, I don't think it's an unusual burden. However, as the case law makes clear, that thorough appellate review of back pay is always appropriate, as I think Hunter- But that's a different point. I mean, what Brown says at pages 10 and 11 of the slip opinion is that you've got two things to show. One, lack of reasonable diligence, but also a reasonable likelihood that the plaintiff might have found comparable work by exercising reasonable diligence. And that's just a few months ago, June 28th. Well, and in listening to that argument and in reading that decision, Your Honor, with respect to that, that's why we think that the approach espoused in Greenway and some of the other cases cited in our brief is correct. What is the point of having to prove a negative? So you want us to- It's not prove a negative. That's what I'm trying to tell you. In a lot of cases, it's the burden of one of the sides that happens to be the burden of the Social Security Administration, step five, to show that there are jobs in the national economy or the regional economy that somebody can perform. And there's a whole cadre of people who hold themselves out as expert witnesses on that point, people who run employment agencies, who are familiar with the economy of a particular area. So it's evidence that's findable. Even if it weren't, I suppose, we did just say that in this circuit, that's one of the things you have to show. So unless you're asking us to overrule an extremely recent decision, I'm not sure where you're going with this point. Well, Your Honor, I think that showing that other work existed should also be tailored to the circumstances of the case. What does that mean? Well, the individual circumstances of each plaintiff. If equity is grounded upon a flexible application of law and a flexible look at the facts and it eschews mechanical concepts, that this requirement to show that other work existed is irrelevant for purposes of showing mitigation. Why? I mean, that's exactly what we were talking about. I don't understand that. I mean, you certainly need to tailor it to the case in the sense that you want to say a hypothetical person with comparable qualifications, experience, age, whatever factors you want to throw in there. So you're not going to say, you know, that Mr. Strogopede should have become a lawyer because he doesn't have a legal license and so it doesn't matter. But, you know, water worker, maybe those kinds of qualifications would have matched up against other jobs in the area. We don't have any evidence. But this is in the section of the opinion about mitigation of damages. So I don't understand why that's not binding. Well, we think, Judge, that if you look at some of the cases cited in our briefs, specifically Payne and Hunter, that second circuit in those cases specifically criticized the plaintiff for not taking advantage. And we think of other employment opportunities. So we think that, and we urge this court to take a look at those decisions, that when viewed through the prism of equity and reasonableness, that an additional requirement, a burden upon a defendant to show that other work existed isn't necessarily well taken. And we recognize that that does conflict with some of the precedent. We're quite candid. We're urging this court to take a fresh look at this case and at this issue, especially when we think about public policy and we think about the nature of job searches now. With the gurney in that's made mention of by plaintiff and the trial court, that involved case where there were high school students that didn't have to do a job search. And that's where the mitigation argument for plaintiff and trial court is grounded. This case is completely different. We concede that for two and a half years, from September 2010 to January 1, 2013, that the plaintiff was indeed mitigated. The plaintiff, through his own actions, by getting temporary work, showed that other work was available. So to now impose an inequitable burden, we think, and also undercut the city's defense that we still don't concede that the plaintiff was qualified to perform the essential functions of his important job, that to show that other work existed still undercuts our defense. And it's a mechanical interpretation of law which runs against some of the precedent that says equity is a flexible concept. Turning to the essential functions argument, we think that on de novo review that there is enough evidence, substantial evidence in the record, that shows that the city proved its case. You have to show that it was a mistake to send this to the jury. And that's not impossible. It happens sometimes. But there's a lot of evidence in this record that a jury could have credited. And one of the things that concerns me, let's say about the time he mixes up Green Bay Road and Grosse Point Road, I don't know what the denominator is, really. And he goes out on a lot of jobs over that month. So maybe the denominator is 100 trips. And if he only, maybe when the computer is malfunctioning, mixes it up once, that doesn't strike me as a lot. If he'd only gone out on 10 trips, you know, he's getting it wrong one in 10 times, that would be different. And the same thing is true of his taking advantage of the office to sort out the computer problems. He does go back several times. But the city apparently had encouraged him to do that, or so a jury could have thought. So, I mean, I don't know. He trips on the stairs and stubs his toe? I mean, really? Well, Judge, I think that you are correct. It's not an impossible burden to overturn a jury verdict. Obviously, we've cited to the levers the Salem case in our brief. But it's also what a reasonable jury can reasonably conclude. I think you're sliding over into the motion for a new trial, where the trial court judge is entitled to step back, take a look, and see whether the verdict is supported by substantial evidence. But, of course, you lost on that, too. And that's a very deferential standard of review. You're almost better off with the 50B. Well, Your Honor, I think that if you look at the evidence, there are enough points in the continuum. And the issue with the driving, it's uncontroverted that it's a necessary special requirement. And he has his commercial driver's license, and somebody who's apparently just fortuitously there, if not spying on him, sees that he drives through this intersection on a green light with no traffic obstructing, and looks down. He's getting his clipboard, it seems. I'm glad he wasn't texting while driving, or doing all the other awful things that people do while they drive. But, again, I don't know how that fits in with the rest of the city's experience with its workers. Well, we think that it's uncontroverted that safety is a critical part of this job. But how many other people who work? I mean, the City of Evans is a big city in this area. It has more departments than just the water department, and it probably does have people who drive. So what happens to the rest of them? Well, they don't have only two water workers in other departments. There are only two water workers who can do this job in 2010. I'm saying, what do you do for somebody who has no accident, but who just is observed? Maybe he doesn't have his seatbelt on, or maybe he's taken his eyes off the road for a minute while he's driving through an intersection, or maybe fails to signal left, or something. What do you do with people who commit minor traffic violations? Well, they're counseled if, in the opinion of the supervisors, which under Cary Otis, we're entitled to look at the supervisors and give some deference to the employer's business decisions. They're counseled. And Cary Otis, which we've cited to in our brief, good authority, cited 197 times in the Northern District and the Seventh Circuit, says that a court should not sit as a super HR department and question a personnel decision, even if they think it might be inaccurate. And with due respect to the trial court, we think that the trial court got it wrong on that, and it was cherry-picking instances or conflating other issues in falling back and saying, there just wasn't enough evidence here. Well, the question for the jury, in keeping with what we have recommended, I'm glad to say, was, you know, was he let go because of his disability? If everything else had been the same, but he wasn't disabled, would he have been released? And that's, so again, I think you're asking for a more searching standard of review than I think applies here. Well, Your Honor, I think that with respect to the issue of whether he could do the job or not, there is enough there that shows that the city proved its case. Oh, if the jury had come out your way, I wouldn't have thought there was anything to that appeal either. But the jury didn't come out your way. And we respectfully submit that they did not look at the evidence the way they should have. So what was wrong? An instruction? Or was this just a runaway jury? I mean, the jury could have said, you know, he passes everything. He passes his field test. They check him in the field, and they kind of spot check the meters that he's installed. He installs them correctly. He can work the computer once he gets his sign-in information, and he can use a little post-it note to help him remember what that is. I mean, there's a lot of evidence that he's performing this job just fine. Why couldn't the jury rely on that? Well, we think that given the very demanding and fast-paced nature of this job, where the plaintiff is driving a two-and-a-half-ton truck, and the safety is the most critical consideration. Why do you emphasize fast-paced? He was doing the work he was assigned. He's not. There's no evidence in this record. Well, on this record, Judge, we respectfully disagree in that his supervisors were telling him, counseling him, why are you coming back to the plant? That was the computer stuff, and the jury could have said he'd been encouraged to do that. Well, other employees who had not taken a disability leave were trained on these new apps that you put onto the computers or these new computers. He was gone for that period. Well, we think that the new app consideration was not accurately considered by the jury in that there was training given to Mr. Stragopedi. He was given a log-in, his first name, on the computer, and the testimony by Vicki Beiner, his immediate day-to-day observer, was that he couldn't even remember that log-in. But then once he logged in, he was fine with the apps. That's what the testimony said. Well, Mr. Bartas indicated that, for instance, when he goes out into the field and goes onto the different road, that he wasn't able to use those apps. He didn't know where he was, and his computer function was impaired because he wasn't using it out in the field the way he should have to perform his job. That testimony, we think, was unreasonably disregarded by the jury and viewed in the totality of all the other testimony by Ms. Beiner, by Mr. Stoneback, and also, let's not forget the doctor. I mean, the doctor did the best he could, given the fact that the interactive process was being willfully frustrated by the plaintiff. Well, I'm not sure that that's true. The doctor's testimony looked to me very careful. He testifies, making it clear the assumptions he's been given and the information he's been given, and limits himself accordingly. But anyway, if you'd like to save a minute, that's fine. I will reserve the rest of my time. Thank you. Okay, sure. Mr. Stavins. Thank you, Your Honor. If it please the court, I'm going to be very brief. I've been a lawyer for 48 years. I've never known this court to overrule a decision two months ago. So let me just address something that occurred to me over the weekend about this argument that the other circuits supposedly got it right, where they say if the employer proves prong one, then he's excused from proving prong two. And in Brown v. Smith, this court said there's two prongs. What prongs you're referring to? Okay, the prongs are you find prongs on a fork. If you could just tell me in real words what you're talking about, that would help. They are, the employer must prove, in order to prove a failure to mitigate, one, that the employee was not actively looking for reasonably comparable work. That's number one. That's conceded, I take it. Pardon? That's conceded, I take it. For the post-January 2013 period. Yes, that he was actively looking for work. Until January 2013. Until 2013. Right. Yeah. After that, then, we have the second item, which is that the employer has to prove that reasonably comparable work was available. And the Second Circuit clearly said, you don't have to prove, Mr. Employer, number two, in the event that you did prove number one. But what's what happened? What is the assumption on which the reasonably comparable work is being searched for? The assumption that the employee was fully capable of doing that work? Or the assumption that there was a disability? Well, if the employee, if the employer raises the mitigation defense, the employer has to show that the employee was not actively looking for that work. No, look. And that was available. Look, I wish you'd address my question. Okay, I'm trying. The reason I ask that question is because it seems implausible that if such work is available and your client is not disabled, as he claims, that he wouldn't be able to get it. So one possible understanding is that your client couldn't find the work because he wasn't able to do it. The other possible understanding was that he couldn't find the work because there were no such comparable jobs. And then we need something to disambiguate which is which. Okay. The burden on that particular issue, Your Honor, is on the employer. Okay. So you're really saying everything turns on the allocation of the burden? Yes. Okay. Yeah. The burden is on the employer. That may be exactly what's true here. Yeah. The burden is on the employer. Now, if the employer, as happened here, doesn't prove the second item, then under the test that has been adapted in the Second Circuit. But your understanding of Brown, I take it, I think it's my understanding too, all the employer would have to show is that there is comparable work for people who can do it. That's what it looks like to me. Yes. Yes. Yes. Okay. Correct. Right. Right. I mean, the plaintiff here is disabled, but he's not so disabled that he can't do a job, that he can't work. Okay. So I thought the point was maybe that his disability affects his capability of learning new things, but for a job such as the water job that he had in Evanston, he's got a solid base with perhaps some reasonable accommodations, maybe yes, maybe no, to do work with which he's reasonably familiar. I was getting some of that out of the brief. Maybe that's too detailed. It perhaps is very detailed, Judge. The simple issue is, did the employer prove the second factor? Well, they didn't even try to prove the second factor. They didn't even try. Okay. And the trial judge said, no, they didn't even try. Under the test of the Second Circuit, they don't have to prove the second factor if they prove the first factor. So the second factor is eliminated. It would be a lot simpler to use real words. Prove the availability of work. You keep saying the second fact. Okay. I'm sorry. You're hoping that code words come across. Real words help. If the employer, according to the test in the Second and other circuits, if the employer proves that the employee was not actively looking for work, then the employer does not have to prove that reasonably comparable work was available. Okay. Now let's look at it the other way. Suppose the employer does prove or fails to prove, I said it wrong, suppose the employer fails to prove that the employee was not actively looking for work. Just the opposite. Well, then there's no point in looking at the second factor, that is the factor of whether reasonably comparable work was available, because he has to prove both of them. It's an and test, not an or test. So the second factor, the availability of reasonably comparable work in the Second Circuit and the other circuits is forever, totally, and completely eliminated. It doesn't even exist as a standard for mitigation of damages. That's why the test in the Second Circuit and the other circuits makes no sense. It's totally inconsistent, obviously, with Brown versus Smith, and it doesn't make any sense because it says there are two tests, but there is no occasion ever when you will look at the second test. So let me ask you a little bit about the merits. There are a couple of things that the city has put together, whether it's the careless driving through this intersection, although we don't like it when people are kind of down here looking for their clipboard instead of focusing on the road, even if it is a green light for the moment and there are no pedestrians and the like. So it seems to me an employer could have a concern about somebody who does something like that, and you have the issue about getting befuddled about where he is and so on. Why in the aggregate are those not enough to justify an employer saying you're just not up to this job? We only have two people on the job. We have to have full confidence. It was a jury question. It was a vigorously contested trial. Both sides put on their evidence. The jury heard all that evidence, and the jury decided. There was conflicting evidence on both sides. That's why the case went to trial. Did he have any other traffic problems? What about his driving skills, just to take that? What evidence was there? I'm sorry? What evidence was there on his record of driving? He had gotten a new commercial driver's license, right, after the accident. Right, and he drove successfully, no accidents, during that period of time, from June to September when he was discharged. He did his job. Some of the things he didn't do perfectly. We agree. That was for the jury to resolve. Was there evidence about the record of the other worker who apparently had this same job? I mean, how does his record stack up? I guess I'm trying to figure out discrimination from that point of view. I'm not sure, Judge. I don't know. Dr. Grujic, you say he doesn't say anything about safety. Dr. Grujic says he may have some mild residual cognitive defects, though. Well, there's a lot of issues. Executive function in particular is what he's focusing on. There's a lot of issues with Dr. Grujic. He made only one examination. He wasn't aware of a lot of things when he wrote the letter. He did not say that the man has to have somebody ride along as an accommodation. It was one suggestion. He did say he has no motor or sensory deficits, therefore he can drive a motor vehicle. And he cleared him to return to work. And he approved him to return to work, as did the other doctor. I forget her name for a second. They both approved him to return to work. Nobody medically said this man can't work. That's about it. Okay. Thank you very much. I think you have a minute, Mr. Farrar. Thank you, Your Honors. Just briefly, the work trial, again, we don't dispute that he could return to work. But as Dr. Grujic made clear in his testimony, the real-world observation of the plaintiff in his 95 percent field-based job is what matters. The city concluded, and it's used its best judgment on the information it had available, that the plaintiff could not do the job safely. Turning to the issue of back pay, again, if the test is a plaintiff can get comparable employment if he could do the job, we, of course, do not concede that the plaintiff was capable of doing the job. And the appropriate exception, as enunciated in Greenway, the other cases, and I think some of the Seventh Circuit cases cited in our brief, which criticized the plaintiff for stopping work, should nullify the two-and-a-half years of back pay. The front pay claim was denied on that basis. We submit that the two-and-a-half years where he was not working, that back pay claim should be dismissed as well. We respectfully request that the judgment below be vacated, or in the alternative, the back pay award be vacated for the two-and-a-half years. Thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.